**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 14, 2022**

# In the Court of Appeals of Georgia

A21A1211.  SRA  MANAGEMENT,  LLC  d/b/a  OLYMPUS
    FENWICK  LUXURY  APARTMENTS  et al. v. SHIRLEY
    PRINCE et al.

RICKMAN, Chief Judge.

In this premises liability action, Shirley Prince and her husband, Atlee Prince, filed suit against SRA Management, LLC d/b/a Olympus Fenwick Luxury Apartments and its business manager, Traci Taylor (collectively, referred to as "SRA"), after they slipped and fell on ice in separate incidences while attempting to traverse the grounds of their apartment complex. SRA filed a motion for summary judgment, which the trial court denied. We granted SRA's application for interlocutory appeal in order to review the trial court's ruling, which we now affirm.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. See OCGA §

9-11-56 (c). This Court's review of a trial court's ruling on a motion for summary judgment is de novo, and the evidence is construed in favor of the nonmovant. See *Gaskin v. Berry's Boat Dock*, 334 Ga. App. 642, 642 (780 SE2d 83) (2015).

So viewed, the evidence shows that the Princes lived together in Olympus Fenwick Luxury Apartments, an apartment community owned by SRA Management, LLC, located in Savannah, Georgia. In January 2018, Savannah experienced a rare winter storm that included the accumulation of snowfall.

Following the storm, the Princes remained indoors for two days, in recognition of the fact that the conditions could be hazardous. After two days, they ventured out in order to get groceries and to visit their newborn great-grandchild in the hospital.

As Ms. Prince prepared to exit her apartment, she noticed that the snow had mostly melted and that the grassy areas outside were wet and muddy from melted snow. She did not see any ice or snow on the walkway. Ms. Prince stepped outside and immediately felt that the walkway was slippery. After taking just a few steps, she slipped and fell on a patch of ice. The walkway was so slippery that Ms. Prince fell repeatedly while attempting to stand. She injured her knee and her back in the fall.

Two days later, Mr. Prince exited the apartment in order to take the trash to the dumpster. He deliberately took a different route than his wife had two days prior in

2

order to avoid the walkway on which she had fallen. As he was walking along the walkway, he, too, slipped and fell on a patch of ice. The walkway did not appear wet, and Mr. Prince did not see any ice prior to his fall. He hit his head as he fell to the ground and temporarily "blanked out."

Mr. Prince's fall was witnessed by one of his neighbors, who deposed that although no ice was visible, the walkways were extremely slippery and she had almost fallen as she carried her newborn baby to the car. That neighbor had previously requested that one of SRA's maintenance technicians tend to the walkways after noticing that no one had taken any action to remove the ice and snow since the storm.[1]

As business manager, Taylor was responsible for the day-to-day operations at the apartment complex and also resided on the apartment grounds. Following the storm, Taylor specifically remembered seeing ice on the sidewalk in front of her apartment and taking precautions to avoid it. Although she could not recall when

---

[1] The Princes submitted the affidavits of several other neighbors who had experienced the slippery walkways, at least two of whom purported to have notified SRA about the slippery conditions. SRA filed a motion to strike the affidavits on the basis that the witnesses were not disclosed prior to the close of discovery. The trial court denied the motion as moot, expressly stating that it did not consider the affidavits because the evidence they contained either did not go to the issue before the court or was redundant to other evidence already contained in the record.

3

specifically, at some point she sought to purchase salt in order to help mitigate the ice and snow, but was unable to locate any for purchase.[2] Taylor acknowledged that her job as business manager included monitoring inclement weather conditions so that she could take appropriate steps to minimize hazards to residents which could arise from a snowstorm, but she did not recall either herself or the apartment administration taking any further steps to have maintenance personnel or any third-party address or alleviate the icy conditions on the walkways around the apartment complex.

The Princes filed suit against SRA, asserting claims of negligence and premises liability for its failure to keep apartment grounds safe for its residents. SRA moved for summary judgment, arguing that its affirmative duty to address hazards on the premises pertained only to obvious hazards resulting from natural accumulations of snow or ice. In addition, to the extent any hazards did exist, SRA argued the Princes possessed equal or greater knowledge of those hazards and failed to take ordinary care for their own safety. In opposition to SRA's motion, the Princes asserted that disputed issues of material fact existed as to whether SRA had superior knowledge

---

[2] SRA's lead maintenance technician was able to purchase basic table salt and distributed it on the first couple steps on each of the apartment buildings' stairways.

4

of the icy conditions on the walkways and/or whether SRA was negligent in failing to take remedial action to address the dangerous conditions.

The trial court held a hearing on the motion and found that the Princes had equal knowledge of the hazard posed by the ice on the ground before their respective falls, which would ordinarily preclude their recovery. The trial court, however, declined to enter summary judgment in favor of SRA, instead ordering, sua sponte, additional briefing on whether the necessity rule might apply to allow the Princes' claims to proceed. SRA maintained that summary judgment was appropriate regardless of the necessity rule because the Princes, it argued, were not constrained to walk on the walkways where the snow or ice hazards existed.

The trial court ultimately denied SRA's motion for summary judgment after concluding that there existed a factual dispute as to whether the necessity rule applied to allow for the survival of the Princes' claims. The trial court certified its decision for immediate review, and SRA filed a timely application for an interlocutory appeal, which this Court granted.

Georgia law provides that, "[when] an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his

failure to exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1. Generally, in order to establish an owner's liability for injuries sustained in a slip-and-fall case, the plaintiff must plead and prove that: "(1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control." (Citations omitted.) *American Multi–Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2), (679 SE2d 25) (2009); see also *Robinson v. Kroger Co.*, 268 Ga. 735, 747-748 (2) (B) (493 SE2d 403) (1997). "The true basis for an owner's liability is his superior knowledge of the existence of a condition that could subject his invitees to an unreasonable risk of injury." See *Garrett v. Hanes*, 273 Ga. App. 894, 895 (616 SE2d 202) (2005).

With respect to slip and fall cases on naturally occurring substances, the general rule is that

> where the accumulation of ice on a premises is naturally occurring and not attributable to any affirmative action on the proprietor's part, the proprietor has no affirmative duty to discover and remove it in the absence of evidence that it had become an obvious hazard by means other than natural accumulation.

*Columbus Doctors Hosp. v. Thompson*, 224 Ga. App. 682, 684 (482 SE2d 705) (1997); *Fisher v. HBS Mgmt.*, 220 Ga. App. 752, 753 (469 SE2d 885) (1996); *Speaks v. Rouse Co. of Georgia*, 172 Ga. App. 9, 10-11 (321 S.E.2d 774) (1984); *Auerbach v. Padgett*, 122 Ga. App. 79, 82-83 (176 S.E.2d 193) (1970).

Nevertheless, the fact that a hazard is naturally occurring does not eliminate a property owner's ever-present duty to exercise ordinary care:

> [T]he accumulation of naturally occurring ice does not negate an owner's duty to exercise ordinary care in inspecting the premises in every circumstance. Ice forming due to inevitable natural forces unaffected by human agency does not preclude examination into the question of whether or not the defendant was negligent in failing to take remedial action. Liability results only from an owner's failure to exercise ordinary care to [take remedial action] after notice to him of the defective condition coupled with a failure to [take remedial action] within a reasonable time.

(Citation and punctuation omitted.) *Dumas v. Tripps of North Carolina*, 229 Ga. App. 814, 816-817 (2) (495 SE2d 129) (1997), citing *Fincher v. Fox*, 107 Ga. App. 695, 698 (1) (131 SE2d 651) (1963); see also *St. Joseph's Hosp. of Atlanta v. Hall*, 344 Ga. App. 1, 6 (1) (b) (806 SE2d 669) (2017); *Kauffman v. Eastern Food & Gas*, 246 Ga. App. 103, 105-106 (3) (539 SE2d 599) (2000).

Additionally, in the specific context of a landlord-tenant relationship, the necessity rule applies when the tenant is required to traverse a known hazard in order to enter or leave his or her home. See *Vinings Run Condo. Assn. v. Stuart-Jones*, 342 Ga. App. 434, 436 (802 SE2d 393) (2017); *Grier v. Jeffco Mgmt. Co.*, 176 Ga. App. 158, 158-159 (335 SE2d 408) (1985). "Under that exception, when the dangerous area is a tenant's only access or only safe and reasonable access to his [or her] home, the tenant's equal knowledge of the danger does not excuse the landlord from liability for damages caused by a failure to keep the premises in repair." (Citation and punctuation omitted.) *Vinings Run Condo. Assn.*, 342 Ga. App. at 436; see also *Hull v. Mass. Mut. Life Ins. Co.*, 142 Ga. App. 269, 270 (235 SE2d 601) (1977) ("To hold otherwise, we would make the [tenant] a captive in her own apartment during cold weather, forcing her to abandon her very means of livelihood until such time as the [landlord] found it convenient to remedy the dangerous situation."). "Thus, the necessity rule exception tempers the equal or superior knowledge rule when there is no other means of safe ingress and egress to the leased premises." (Citation and punctuation omitted.) *Vinings Run Condo. Assn.*, 342 Ga. App. at 436.

SRA contends that the trial court erred by denying its motion for summary judgment because it asserts the Princes possessed the ability to leave their apartment without traversing the hazardous ice.[3] We disagree.

As explained by the trial court:

Mrs. Prince testified that she fell only a few steps outside of her front door while attempting to go to her car in the parking lot. Given her testimony regarding the proximity of her fall to her front door, . . . a patch of ice on the walkway might be considered a hazard that impeded her safe egress from her home.

---

[3] Although the trial court stated in its order that, but for the necessity rule, it would have granted summary judgment to SRA on the grounds that SRA did not have superior knowledge of the hazard, SRA contends that the court erred to the extent it failed to recognize that SRA had no affirmative duty to remove the ice. As previously stated, the fact that the ice was naturally occurring did not absolve SRA of its duty to exercise ordinary care to ensure that the premises was safe for its invitees which may, under certain circumstances, require that SRA take remedial action to address the icy conditions within a reasonable amount of time. See *Phelps v. Consolidated Equities Corp.*, 133 Ga. App. 189, 191 (210 SE2d 337) (1974) (rejecting a rule in which no duty existed upon a landlord to remove temporary accumulations of rain water, ice, and snow in favor of a rule in which a landlord may be liable for the failure to remove such matter as "will be determined by applicable principles of negligence law"); see also *Moore v. WVL Restaurant*, 255 Ga. App. 762, 763 (566 SE2d 465) (2002); *Dumas*, 229 Ga. App. at 816 (2).

9

Mr. Prince testified that he fell walking to the complex dumpster to take out the apartment trash, albeit a distance further from his front door than where Ms. Prince fell. Given his testimony that he [took a different walkway than his wife, which] was further from the home but was also performing what a jury could find to be a necessary household chore at his place of residence, there is still a question of fact [as to] whether he had safe egress from his residence for the purposes of the necessity rule.

SRA maintains that the Princes failed to establish that they were "constrained by circumstances to walk on the sidewalk where the hazard existed," and asserts that they could have stepped off of the walkways or taken different paths in order to avoid the ice.

Nevertheless, summary judgment in premises liability cases is proper "only when the evidence is plain, palpable, and undisputed." (Citation and punctuation omitted.) *American Multi-Cinema*, 285 Ga. at 445 (2). There is evidence in the record that the grassy areas surrounding the walkways were wet and muddy from melted snow. The question of whether the Princes were expected to traverse those muddy conditions (which may have also been slippery) and/or whether there were safe and reasonable alternate paths for the Princes to have taken are questions for jury resolution. See *Phillips v. King*, 214 Ga. App. 712, 713 (448 SE2d 780) (1994); *Hull*,

142 Ga. App. at 270; *Grier*, 176 Ga. App. at 158-159. Accordingly, the trial court did not err in denying summary judgment on the basis of the necessity rule.

*Judgment affirmed. McFadden, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*